IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| MARILYN BREWER KING, | |
| Plaintiff, | No. 9:21-CV-85-MAC |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

The claimant, Marilyn Brewer King, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The District Court referred the case to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. The undersigned finds that the Administrative Law Judge ("ALJ") erred in assessing the medical opinion evidence and that remand is warranted.

## I. FACTUAL AND PROCEDURAL HISTORY

King filed a claim for disability insurance benefits (DIB) on March 14, 2019, alleging she became disabled on December 7, 2018. (Tr. 22.) During the relevant period, King was an individual "closely approaching retirement age" (age 60+) with a high school education. (Tr. 167.) She has past relevant work as an administrative assistant and mail clerk/non-postal. (Tr. 32.)

King's claim was denied initially and upon reconsideration, therefore she requested an administrative hearing that was held before ALJ William Sharp on October 7, 2020. (Tr. 41-71.) ALJ Sharp issued his decision denying her claim on October 29, 2020. (Tr. 19-37.) ALJ Sharp

utilized the five-step sequential analysis model specified by regulations and approved by courts.[1] At step one, ALJ Sharp found that King has not engaged in substantial gainful activity since the alleged onset date. (Tr. 24.) At step 2, ALJ Sharp determined that King had the following severe impairments: rheumatoid arthritis of multiple major joints and wrists, major depressive disorder, posttraumatic stress disorder, and anxiety disorder. (Tr. 25.) He considered her symptoms at step three but found that she does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).[2] (Tr. 25-26.) In assessing her abilities, he found that she has the residual functional capacity ("RFC") to perform light work, except that she:

> cannot climb ladders, ropes or scaffolds. The claimant can frequently crouch, crawl, kneel, and climb ramps or stairs. The claimant can frequently handle with the dominant right upper extremity. The claimant may need to alternate standing and walking with sitting for 10 minutes in the morning and afternoon for comfort while remaining on task, in addition to the normal breaks. The claimant may need to take pain, anti-inflammatory and psychiatric medications while at work. The claimant is limited to frequent interaction with the general public. The claimant can remain on task at a sustained rate of concentration, persistence and pace for at least 90 percent of the workday, i.e., will be off task up to 10 percent of the workday. The claimant is limited to low stress work settings and tasks, i.e., no forced production paced or assembly line type jobs. The claimant can adapt to changes in work methods and routines no more frequently than once every two weeks. climb ladders, ropes or scaffolds and never balance. The claimant can occasionally climb ramps, stairs and occasionally stoop. The claimant must avoid dangerous machinery or equipment, unprotected heights and operating a motor vehicle.

---

[1] To determine whether a claimant is disabled, the Commissioner's analysis proceeds along five steps. *See* 20 C.F.R. § 404.1520(a)(4); *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). The Commissioner considers (1) whether the claimant is engaged in "substantial gainful activity," (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations, (4) whether the claimant can still do his "past relevant work," and (5) whether the impairment prevents the claimant from doing any relevant work. *Id*.

[2] Specifically, he considered Listings 14.09 (inflammatory arthritis), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive compulsive disorder). (Tr. 25-26.)

(Tr. 27.) In relying on vocational expert testimony, ALJ Sharp concluded that King was capable of performing her past relevant work of administrative assistant and mail clerk, and therefore not disabled. (Tr. 32.) The Appeals Council denied King's request for review on March 17, 2021. (Tr. 1-5.) Having exhausted administrative remedies, King seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. JUDICIAL REVIEW

This court reviews the Commissioner's denial of social security disability benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted). Substantial evidence is merely enough that a reasonable mind could arrive at the same decision; though the evidence "must be more than a scintilla[,] it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quotation marks and citation omitted).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Commission*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). Rather, it is for the Commissioner to weigh evidence and resolve conflicts. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

### III.  POINTS OF ERROR AND RESPONSE

King raises two points of error on appeal.  First, that ALJ Sharp failed to properly evaluate the medical opinion evidence consistent with Agency authority and Fifth Circuit precedent, resulting in an RFC assessment that is not supported by substantial evidence.  Second, she claims that ALJ Sharp improperly rejected her subjective complaints.  The Commissioner responds that contrary to King's allegations, ALJ Sharp properly addressed the medical opinion evidence in accord with the new, relevant regulations and that substantial evidence supports his decision.  She further contends that the ALJ's analysis of her subjective complaints is supported by the record and entitled to judicial deference.  The undersigned recommends remanding her case based on the first argument presented, and therefore declines to address King's second point of error.

### IV.  EVALUATION OF MEDICAL OPINION EVIDENCE

Pursuant to the revised rules for evaluating medical opinions, the ALJ must determine the persuasiveness of a physician's medical opinion. 20 C.F.R. § 404.1520c(b). When evaluating whether a medical opinion is persuasive, the ALJ considers five factors: 1) supportability; 2) consistency; 3) the relationship with the claimant; 4) specialization; and 5) other factors which "tend to support or contradict the opinion." *Id*. § 404.1520c(c).  When addressing the sufficiency of an ALJ's persuasiveness discussion under § 404.1520c(b)(2), one court described the ALJ's obligation as follows:

> An ALJ's persuasiveness discussion is critical to his analysis and . . . must provide the Court with an 'adequate discussion' of his reasons for finding a particular medical opinion to be persuasive or unpersuasive. The measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof. Stated differently, there must be a

discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding.

*Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 500 (S.D. Miss. 2021) (citing *Pearson v. Comm'r*, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021); *Kilby v. Kijakazi*, No. 4:20-CV-03035, 2022 WL 1797043, at *4 (S.D. Tex. Mar. 15, 2022). The most important factors in this analysis are supportability and consistency. *See id.*; 20 C.F.R. § 404.1520c(b)(2) (The ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior medical findings in [his] determination or decision.").

"Supportability" focuses on how well the medical evidence and supporting explanations given by the medical provider support the provider's opinion. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."); *see also, Vellone v. Saul*, 1:20-cv-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("[T]he strength of a medical opinion increases as the relevance of the objective evidence and explanations presented by the medical source increase." (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency," on the other hand, is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." (*Id.*)

## V. EVIDENCE OF MENTAL LIMITATIONS

In December 2018, King worked as a pre-ombudsman in a Texas Department of Justice office to mitigate instances of prison rape when she had a "breakdown," left work, and did not return. (Tr. 376) (Dr. McLendon's report detailing King's symptoms and suspected cause). Her job required her to read letters written by inmates detailing molestation and other crimes, which she believes triggered her depression, anxiety and distress because she was sexually abused as a

5

child. (*Id.*) Regarding her mental limitations, King relies on two medical opinions for the basis of her appeal: Jayne Schulte, M.D. (her treating physician), and David McLendon, Ph.D. (psychological consultative examiner). The record also contains evidence from Julia Roy, M.A., LPC-S ("LPC Roy"), Larry Flowers, M.D. (treating psychiatrist), Robert White, Ph.D. (state agency medical consultant "SAMC"), and Howard G. Atkins, Ph.D. (SAMC). All of the relevant evidence of King's mental impairments is summarized below in chronological order of her treatment history.[3]

### A. Treating physician, Dr. Schulte[4]

Dr. Schulte started treating King in December 2018. (Tr. 363.) In May 2019, Dr. Schulte completed an *Attending Physician's Statement of Work Capacity and Impairment* documenting the primary diagnosis of severe depression, with the secondary diagnosis of PTSD and rheumatoid arthritis. (Tr. 363.) Dr. Schulte summarized King's complaints to include depressed mood, "crying all the time," irritability, angered easily, not sleeping well, frequent disturbing nightmares and feeling anxious. (Tr. 364.) She noted that during the exam she was crying off and on and anxious about being unable to work, but her physical exam was otherwise normal. (*Id.*) King displayed slowed speech with trouble expressing herself clearly, jumping around a lot during conversations, and "seemed to have trouble focusing on the topic at hand." (*Id.*) Dr. Schulte opined the King was totally impaired from working as of December 7, 2018, because of severe depression and inability to function in stressful situations, including work. (*Id.*) She

---

[3] Although King suffers from multiple physical and mental impairments, the undersigned recommends remand for ALJ Sharp's assessment of her mental limitations. Accordingly, the discussion is limited to medical evidence relating to her alleged mental impairments only.

[4] Dr. Schulte worked at Huntsville Pediatric and Adult Medicine Associates with Megan Powell, M.D., who treated King in Dr. Schulte's absence. (Tr. 747.)

6

recognized that she "has severe depression and cannot function in a stressful situation, including work" and to "expect permanent work restriction." (*Id.*)

Dr. Powell submitted a letter on June 25, 2019, regarding King's treatment for PTSD, major depressive disorder, and rheumatoid arthritis. (Tr. 747.) Dr. Powell opined that King cannot return to work and likely would not be released to return due to the severity of her symptoms and impairment of her ability to function in a work environment. (*Id.*) She noted that King was seen in the office every one to two months, as well as follow up with her rheumatologist, Dr. Warrier, and a counselor. (*Id.*)

### B. Psychological Consultative Examiner, Dr. McLendon

On June 12, 2019, King underwent a consultative examination by Dr. McLendon, who observed she "exhibited very high levels of anxiety and apprehension."[5] (Tr. 375.) He determined that King suffers from high anxiety, PTSD with worsening symptoms, long-term depression that caused a "significant deterioration with regard to her functioning overall." (Tr. 379.) Dr. McLendon reported that King has functioned in this decompensated state for the past several months. (Tr. 377.) He further noted that her abstract thinking was poor and her mood was characterized by high levels of anxiety and apprehension, as well as depression, and her affect was generally unstable. (Tr. 377-378.) Ultimately, Dr. McLendon opined that King's symptoms were worsening such that she could not work, support herself, or maintain stability. (*Id.*) He ultimately noted significant limitations in her ability to sustain concentration and persist in work-related activity at a reasonable pace, and that she cannot deal with normal pressures in a competitive work setting at this time. (*Id.*)

---

[5] Dr. McLendon based his diagnosis on "observations of the client, including observed symptoms, historical information provided by the client regarding past symptoms and treatment, and records provided by DDS." (Tr. 378.)

7

C.  SAMCs Drs. White and Atkins

Dr. White completed his review of King's medical record in June 2019.  He reviewed Dr. McLendon's report and Dr. Schulte's records and recognized her diagnoses of depression and anxiety. (Tr. 73-77.)  He concluded that she has moderate limitations in the following abilities:

- Carry-out detailed instructions,
- Maintain attention and concentration for extended periods, and
- Perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.

(Tr. 79.)  Dr. Atkins completed his review of King's medical record in November 2019, and concurred with Dr. White's assessment. (Tr. 92.)

C.  LPC Roy

LPC Roy started seeing King in August 2019.  (Tr. 684.)  LPC Roy's notes state that King has anxiety and depression, a history of domestic abuse, and attempted suicide at age 17. (Tr. 687.)  At the initial visit, LPC Roy noted that King presented with fair-to-good ("normal") cognition, average perception, neutral mood with a congruent/low affect, and good judgment. (Tr. 684.)  In October 2019, LPC Roy noted that King presented with "a lot of anxiety with physiological symptoms such as shakiness in her voice, wringing of her hands, and shakiness." (Tr. 678.)  In January 2020, King presented to LPC Roy and self-reported anxiety attacks and flashbacks when conflict arises. (Tr. 680.)  King conveyed that she often sits with her back near a wall while facing the door, and that she worries about people being able to see her dress, so she changes her clothes in a hallway, and experiences "vivid dreams, nightmares, and rumination of past issues." (*Id.*)

D.     Dr. Flowers

The medical record also contains a *Psychiatric Assessment* from Larry Flowers, M.D., who completed an initial psychiatric evaluation on March 17, 2020. (Tr. 684.) Dr. Flowers diagnosed King with "major depressive disorder, recurrent severe without psychotic features," anxiety disorder, and post-traumatic stress disorder, chronic ("PTSD"). King followed-up with Dr. Flowers approximately one month later and reported that she stays in her house all day and night, has only one friend, and that her last appointment with LPC Roy was January 2020. (Tr. 695.) He described her mood as depressed, with a logical thought process and normal cognition, with no signs of attentional difficulties, and assessed the same mental disorders of major depression, anxiety, and PTSD. (*Id.*) King followed up with Dr. Flowers on May 5, 2020, treatment notes again document depression, anxiety/panic attacks, use of anti-depressants, and lack of sleep. (Tr. 699-700). Dr. Flowers continued her anti-depressant prescription and advised her to follow-up in 3 weeks. (*Id.*)

E.     Dr. Warrier

Dr. Warrier was King's treating rheumatologist. Accordingly, his notes mostly focus on treatment and symptoms related to rheumatoid arthritis, which are not relevant to this discussion. However, his treatment notes make a general reference to her mental symptoms. On February 28, 2020, Dr. Warrier noted that King has PTSD, worsening of anxiety and depression, but described her as alert, oriented with intact cognitive function. (Tr. 803.) On September 17, 2020, he noted that King had "increased depression, psychiatric problems," but under the "PSYCH" comment of his treatment note he reported that she appeared alert, oriented, with cognitive function intact. (*Id.*)  The records do not establish that he performed any kind of

psychological testing or evaluation, so that notation was most likely based on his general physical impression of King's mental status.

## VI. THE ALJ'S ASSESSMENT OF MENTAL LIMITATIONS

The revised rules for evaluating medical opinions require ALJs to provide an "acceptable discussion" of the medical opinion evidence. In an effort to comply with the rules, ALJ Sharp dedicated an entire section of his decision to the discussion of the medical opinion evidence. He found SAMC Drs. White and Atkin's opinions "generally persuasive" because "they were consistent with the residual functional capacity." (Tr. 30.) He found Dr. McLendon's opinion "not persuasive as it directly conflicted with and was unsupported by both his own examination notes and the other medical information discussed above in this decision." (Tr. 31.) He did not refer to Dr. Flowers' *Psychiatric Assessment.* He considered Dr. Warrier's opinion and found it "not persuasive because it was inconsistent with and unsupported by the objective evidence." (Tr. 31.) ALJ Sharp further recognized that Dr. Warrier's "mental examinations were essentially within normal limits." (*Id.*)

ALJ Sharp's explanation is sufficient under § 404.1520c *if* the doctor's treatment notes strayed from the limitations assessed, he identified the clear inconsistencies, and his finding is supported by substantial evidence. *See Brent v. Kijakazi,* No. 3:21-CV-246-FKB, 2022 WL 16009198, at *3 (S.D. Miss. Sept. 19, 2022) (reviewing courts "will now look first and foremost simply to whether substantial evidence exists to support an ALJ's opinion and not whether one opinion was correctly weighted in relation to any other(s)"); *Cooley*, 2021 WL 4221620, at *6 (finding that the "measuring stick" for an adequate discussion is whether findings are supported by substantial evidence and does not require speculation about the reasons behind the ALJ's persuasiveness findings); *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (recognizing that,

10

under § 404.1520c, an applicant's "treating physicians are not entitled to special deference," and reviewing ALJ's analysis under this regulation for substantial evidence); compare with *Webster v. Commissioner*, No. 3:19-cv-97-DAS, 2020 WL 760395, *3 (N.D. Miss. Feb. 14, 2020), aff'd, 19 F.4th 715 (5th Cir. 2021) (affirming where ALJ made specific references to the record, and substantial evidence supports his decision); *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022) (affirming where ALJ found opinion evidence unpersuasive and referenced specific records that were inconsistent with the doctor's opinion); *Chunn v. Comm'r of Soc. Sec. Admin.*, No. 320CV00667KHJBWR, 2022 WL 4225394, at *2 (S.D. Miss. Sept. 13, 2022) (finding that the ALJ's explanation was adequate where he referenced x-rays, doctor's evaluation, and nurse's treatment notes to find the opinion evidence "not supported by the overall evidence of record").

The undersigned finds that ALJ Sharp's explanation fails the specificity threshold of § 404.1520c for two reasons. First, ALJ Sharp's reference to supporting evidence is ambiguous and precludes meaningful appellate review. *See Brianne S. v. Comm'r of Soc. Sec.*, No. 19-CV-1718 (FPG), 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (remanding where ALJ summarily concluded that examining physician's opinion is inconsistent with overall medical evidence)*; Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) (holding that the ALJ's explanation is not sufficient where he cited to some "objective medical evidence in the record" and simply concluded that an opinion is "consistent with other evidence in the file") (internal citations omitted). Even though ALJ Sharp made a vague reference to the record, he should have provided a more precise reference to what *specific* evidence demonstrated "normal" examinations. Without which, the undersigned must speculate as to the evidence and reason

11

behind ALJ Sharp's persuasiveness finding. Therefore, his explanation fails the specificity required under § 404.1520c.

Second, the treatment notes relied on by ALJ Sharp do *not* document "normal" mental examinations, and therefore, his decision is not supported by substantial evidence Substantial evidence under the Social Security Act "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. In light of the evidence identified and discussed above, the undersigned concludes that a reasonable mind could not accept that King's mental examinations were "normal." Therefore, ALJ Sharp's decision is not supported by substantial evidence.

## VI. CONCLUSION

In summary, the undersigned finds that ALJ Sharp's failure to properly evaluate the medical opinion evidence was not harmless. Accordingly, the Commissioner's administrative decision should be remanded. If necessary, the Commissioner should revisit the other issues raised in King's brief at the administrative level.

## VII. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2). A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 9th day of March, 2023.

_____
Zack Hawthorn
United States Magistrate Judge